# JUNE TERM, 1921.*

PERITZ *v.* PELAVIN.

APPEAL AND ERROR—CONDUCT OF COURT—FAILURE TO OBJECT IN
COURT BELOW—SAVING QUESTION FOR REVIEW.

In an action for damages for the breach of a building
contract, where, upon stipulation, a default judgment was
set aside, but the default allowed to stand, defendants
agreeing to abide by the decision of the court without
appeal, and in the meantime secure the plaintiffs by a
deposit of $2,000 worth of liberty bonds with the clerk
of the court, which they failed to do, and, upon the
hearing, defendants were allowed all of their claims in
reducing the amount plaintiffs claimed to be owing to
them, the court ruling that examination of witnesses in
defendants' behalf was therefore unnecessary, and the
record fails to show that defendants took exception to
said conduct of the court, they are in no position to raise
said question on error.

Error to Wayne; Webster (Clyde I.), J.   Submitted
April 7, 1921.   (Docket No. 36.)   Decided July 19,
1921.

Assumpsit by William Peritz against Samuel Pelavin
and another for breach of a building contract.   Judg-
ment for plaintiff.   Defendants bring error.   Af-
firmed.

*Rood & Visscher,* for appellants.

*Maurice Dreifuss,* for appellee.

MOORE, J. The defendants, August 5, 1916, agreed

*Continued from Vol. 214.

to build for the plaintiff a house which was to cost
$5,500.   Defendants commenced building the house,
and before it was finally completed the plaintiff claims
they left their work and did not complete their con-
tract.   This action was brought to recover the amount
paid by the plaintiff for the completion of the house.
Summons was served on Harry Pelavin under date of
December 27, 1917, and defendants entered their ap-
pearance by attorney on January 10, 1918.   August
24, 1917, a declaration was filed.   The *ad damnum*
clause was in the sum of $1,500.   Upon demand a
bill of particulars and an amended bill of particulars
were filed.   October 9, 1918, the default of defendants
was taken.   On October 29, 1918, a judgment was
entered in favor of the plaintiff in the sum of $2,042.40.
Later a change of the attorneys for the defendants
was made.   May 14, 1920, a motion was made to
amend the judgment

"For the reason that the judgment exceeds the
amount claimed in the declaration in said cause, and
was rendered by default in the absence of the defend-
ants, and of every person representing them."

A further motion to annul judgment was made
August 5, 1920, because:

(*b*) That no proof of default in said cause was ever
made therein.

(*c*) That the judgment in said cause is void because
said judgment was taken without notice being first
given to the defendants herein.

A motion for a new trial was made May 25, 1920.
Another motion for a new trial was made August 5,
1920, based upon the following, in addition to the
grounds mentioned in the motion for a new trial, to
wit:

"That said judgment was entered in said cause
without any personal service having been made upon
the defendants herein, which said fact excepts this

case from that portion of Circuit Court Rule No. 32, § 4, prohibiting a new trial after six months, and brings this case under the rule stated in the first sentence of said section allowing a new trial."

June 5, 1920, the attorney for the plaintiff moved to dismiss these various motions and asked for the entry of a *nunc pro tunc* judgment for $1,500 to comply with the claim stated in the declaration.

June 12, 1920, the court was about to pass upon these various motions when the following occurred:

"*Mr. Dreifuss:* I will consent at this time that the judgment may be set aside but the default shall stand.

"*The Court:* Yes.

"*Mr. Dreifuss:* And we may appear before your honor and take proofs as to amount of our claim?

"*The Court:* Yes.

"*Mr. Dreifuss:* I have no objection to that, and they must put up a bond, before we have a hearing, to pay any judgment and costs.

"*The Court:* Yes, I think you should secure them.

"*Mr. Rood:* We would like to deposit liberty bonds as to security. I think that would be easier and simpler instead of drawing a bond.

"*The Court:* You said you had $2,000 of liberty bonds?

"*Mr. Rood:* We have $2,000 of liberty bonds and will deposit those with the clerk of the court.

"*The Court:* Supposing you make a statement on the record.

"*Mr. Rood:* We consent to have the default stand and the assessment of damages to be set at an early date, which we prefer to have before your honor because of hearing this motion and that the costs should depend upon how it appears to your honor at the time the hearing is made as to who is entitled to them and if we should succeed in reducing the amount below the *ad damnum* clause, I presume we would be allowed costs, otherwise we would pay costs.

"*The Court:* Very well, take the order Mr. Clerk. Will both sides agree to be bound by the amount that the court finds, or is this going to be an appealed case?

(Discussion.)

"*The Court:* I think I will deny your motion then unless you are willing to do that.

"*Mr. Rood:* Unless we are willing to consent there will be no appeal?

"*The Court:* Yes. In other words, I will give you permission to show what the true amount of the verdict should be and I think after the lapse of two years you should be bound by that. Unless you are willing to do that, I shall deny your motion.

(Mr. Rood confers with client.)

"*Mr. Rood:* I think, your honor, in view of your honor's position in the matter, rather than to delay it any further I would accede to that condition.

"*The Court:* Very well. Then upon the filing of $2,000 liberty bonds with the county clerk as security for any verdict or judgment that may be entered, an order may be entered setting aside the judgment and you both can agree upon the time to come in and I will take it up any time you want to."

Later the parties were in court and the trial proceeded before the judge. The attorneys were not agreed upon the specifications which were referred to in the contract and none were proven and none appear in the printed record. In the course of the trial a colloquial discussion occurred between the judge, the counsel and the witnesses, the evident purpose of which was to shorten the trial and to get at the merits of the controversy. Of this discussion the judge said:

"It may be considered that the questions of the defendant and the conversation between court and counsel and defendants may be considered as testimony, instead of his taking the stand and going over all the matter again."

The result of the hearing was a judgment in favor of the plaintiff in the sum of $1,365.44 entered July 3, 1920. On July 6, 1920, a motion was made for a new trial. This was overruled and the case is brought here by writ of error.

After judgment was entered, in disposing of some of the proceedings, the trial judge stated:

"*The Court:* The judgment originally entered in this case had stood for such a long time that I did not think it should be set aside. I intended at the time to reduce it to the amount stated in the *ad damnum* clause namely, $1,500. Mr. Rood assured me that there were some items that, as a matter of justice, should be deducted from this. I finally said that I would set aside the judgment but not the default, and have a hearing on the claims as to the amount due, providing they would be bound by the amount I found due owing from the defendants to the plaintiff, and also providing further that certain liberty bonds which had been referred to were deposited in the county clerk's office as security for whatever amount I might find to be due. This was agreed to in open court. At the hearing after the plaintiff had put in testimony as to the different amounts claimed by him and after asking several questions of the defendants and their counsel, Mr. Rood, as to the different items which they claim to be deducted, I finally decided to allow all the claims of the defendant, and taking them up one by one I subtracted them from the total of the plaintiff's claims. As I recollect I allowed every one in full, except one which I compromised by allowing 50 per cent. of the item to the plaintiff and 50 per cent. to the defendant. This reduced the claims of the plaintiff, with interest to $1,327.19, which is the amount judgment was entered for. This is the reason I did not go on and take testimony. There were several witnesses in the courtroom ready to testify to various items as claimed by the defendant, but as I allowed them I cannot see any reason for putting in the testimony. I expected that would end the case in accordance with the agreement. After that there was another conference at which all the items were gone over again and at Mr. Rood's request $50 more was allowed defendant. This made complete allowance of every item asked for by defendant. I now find that the liberty bonds were not filed as agreed, and I would not permit any further proceedings in this court for that reason. The defendants have not kept their word, and I do not believe that they are entitled to any further consideration. However, I do not believe a case exists or should

exist, where a right of appeal is absolutely denied, even though I feel this way about the case myself, and I do not think that I should decide that they have no right of appeal, but believe that the Supreme Court should so decide upon the record in this case.

"A regular bond on appeal has now been presented with an order for stay of proceedings notwithstanding that the other bonds were not filed in accordance with the agreement, and notwithstanding that, by this appeal, they are not living up to their agreement, to be bound by the amount that I found to be due, which was really the condition upon which the judgment was set aside and a hearing granted. This bond being in proper form and signed by a reliable surety company, and fully protecting the plaintiff."

The case is brought here by writ of error.

Counsel for appellants present some minor questions which do not call for discussion.

We now quote from the brief:

"That the stipulation not to appeal was intended and could only be understood to mean that the defendants should have the customary opportunity to present their case. They never intended nor could reasonably be understood to intend to stipulate to be bound by the court's decision without any opportunity to cross-examine the plaintiff and present testimony in defense. No imputation against the good intentions of the trial court is here suggested. But what transpired was not what the defendants submitted to accept for waiver of their right to appeal. To say that defendants must accept a judgment rendered on the testimony of witnesses they are not permitted to cross-examine, on proof that they are denied the right to dispute, and rendered without permitting them to adduce any witness in their own defense, is a travesty. Manifestly, no stipulation to submit to any such thing ever was made. Surely no such transaction can with any propriety be called a judicial proceeding. What the defendants consented to accept was an opportunity: 1, to cross-examine the witnesses produced against them; 2, to produce witnesses in their own behalf; and 3, to be heard by counsel in their defense. All

this was denied them.   Without this it cannot be said in any true sense that they have had a day in court."

Upon the oral argument counsel for appellants were asked to state where in the record they complained of the conduct of the court in not permitting them to swear witnesses.   Counsel were not able to refer to the record readily but promised to supply the information later.   In a letter to the Chief Justice, dated April 2, 1921, counsel call attention to two pages of the printed record.   A reference thereto does not show the name of any person offered as a witness, nor does it show that the specifications about which counsel differed were properly identified to be offered in evidence, nor does it appear that any exceptions were taken to the action or the non-action of the trial judge.

If any one has occasion to complain in the case shown by this record it is not the defendants.

The judgment is affirmed, with costs to the plaintiff.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.